IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMY A. NYUWA,

        Petitioner,

v.

FIELD OFFICE DIRECTOR,
Immigrations and Customs
Enforcement, Portland,
Oregon; ADMINISTRATIVE
APPEALS OFFICE, Washington,
D.C.; LORETTA LYNCH, Attorney
General of the United States;
and JEH JOHNSON, Secretary of
the Department of Homeland
Security,[1]

        Respondents.

3:13-cv-01275-BR

OPINION AND ORDER

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Jeh Johnson, Secretary of Homeland Security, is substituted for former Secretary Janet Napolitano and Loretta Lynch, Attorney General of the United States, is substituted for former Attorney General Eric Holder, Jr.

1  -  OPINION AND ORDER

**JEREMY A. NYUWA**
2137 S.E. 130th Avenue
Portland, Oregon 97233

    *Pro Se* Petitioner

**BILLY J. WILLIAMS**
Acting United States Attorney
**JAMES E. COX, JR.**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1117

    Attorneys for Respondents

BROWN, Judge.

    This matter comes before the Court on Respondents' Motion (#47) for Summary Judgment.  On March 24, 2015, the Court sent a Summary Judgment Advice Notice (#48) to Petitioner Jeremy Nyuwa in which the Court informed him of the procedures, deadlines, and evidentiary requirements that apply to a motion for summary judgment.

    For the reasons that follow the Court **GRANTS** Respondents' Motion (#47) for Summary Judgment and **DISMISSES** this matter **with prejudice.**

## BACKGROUND

    The following facts are undisputed in the record on summary

judgment:[2]

Petitioner is a native and citizen of Nigeria who entered the United States as a student in 1998. On November 4, 2004, an Immigration Judge (IJ) denied Petitioner's petitions for asylum and other relief. On March 2, 2006, the Board of Immigration Appeals (BIA) dismissed Petitioner's appeal of the IJ's decision, but "reinstated the grant of voluntary departure." Petitioner, however, failed to voluntarily depart the United States, and, therefore, the order of voluntary departure converted to a removal order.

Petitioner sought relief from the removal order on various grounds including ineffective assistance of counsel. On January 23, 2013, after the BIA rejected Petitioner's efforts to obtain relief from removal, Petitioner petitioned for review in the Ninth Circuit Court of Appeals. That petition remains pending, and Petitioner's removal is, therefore, stayed pending appeal.

On April 5, 2012, the Immigration Court held a bond redetermination hearing at which the government argued Petitioner

---

[2] Although Petitioner expresses disagreement with some facts contained herein and makes arguments based on additional facts, Petitioner has not made any evidentiary showing sufficient to create a genuine dispute of material fact as to any fact herein or to support Petitioner's proposed additional facts. In light of the fact that the Court advised Petitioner of the evidentiary requirements on summary judgment in the Summary Judgment Advice Notice, the Court will not consider Plaintiff's unsupported factual allegations.

3   -   OPINION AND ORDER

should be denied bond because he represents a flight risk. The Immigration Court agreed Petitioner represents a flight risk. The court, however, concluded "$30,000.00 will secure his appearance if he is required to report for removal or a future Immigration Court proceeding."

On September 18, 2012, Jason Simmonds posted the $30,000.00 bond for Petitioner in Portland, Oregon. The Immigration Bond signed by Simmonds (Bond Agreement) provided as follows:

> (1) BOND CONDITIONED UPON THE DELIVERY OF AN ALIEN. In consideration of the granting of the application of the above alien for release from custody under a warrant of arrest issued by the Attorney General charging that he/she is unlawfully in the United States, provided there is furnished a suitable bond as authorized by Section 236 and/or Section 241 of the Immigration and Nationality Act, the obligor hereby furnishes such bond with the following conditions if: (1) the alien is released from custody and if the obligor shall cause the alien to be produced or to produce himself/herself to an immigration officer or an immigration judge of the United States, as specified in the appearance notice, upon each and every written request until exclusion/deportation/removal proceedings in his/her case are finally terminated; (2) the said alien is accepted by the DHS for detention or deportation/removal; or (3) the bond is otherwise canceled, this obligation shall terminate. If, however, the obligor fails to surrender the alien in response to a timely demand while the bond remains in effect, the full amount of the bond (see paragraph C above) becomes due and payable. The obligor further agrees that no order issued by or under the authority of the Attorney General or Secretary of Homeland Security by virtue of which issuance or execution of any order of deportation/removal is or may be deferred, shall be in any manner construed to impair or render void this obligation or any part thereof.

Simmonds also signed a form entitled "Bond Obligor

Responsibilities" in which Simmonds acknowledged the following responsibilities:

> 1. You must be able to present the Subject to an Officer of this Service each and every time a demand is made of you.
>
> * * *
>
> 3. The Bond will remain in effect until the case is resolved. The case is resolved only when the Subject is found to be legal in the United States or until a legal departure is verified.
>
> * * *
>
> 7. If you fail to receive notice and/or fail to surrender the Subject upon demand, you will forfeit the Bond.
>
> * * *
>
> 10. If you ever have reason to believe that you are not going to be able to guarantee the delivery of the Subject of the DHS/ICE-ERO upon demand, you may have your bond cancelled by returning the Subject to the custody of this Service.

Both Petitioner and Simmonds represented Petitioner would reside at an address on S.E. 71st Avenue in Portland, Oregon. In the event Petitioner moved while he was released on bond, Immigration and Customs Enforcement (ICE) informed Simmonds that it was very important that Petitioner submit a Form AR-11 informing ICE of any change of address.

At some point after Simmonds posted bond for Petitioner the government became aware that Petitioner was living at an address in Seattle, Washington. ICE did not have a Form AR-11 on file that notified ICE of the change of address. In addition, at this

5  -  OPINION AND ORDER

time ICE discovered it did not have a valid travel document on file for Petitioner.

Accordingly, on January 3, 2013, ICE sent to Petitioner and Simmonds a Notice to Obligor to Deliver Alien to an address in Portland at 10:00 a.m. on January 24, 2013, to "discuss your immigration status."

On January 17, 2013, Petitioner called the ICE Seattle Field Office to inform ICE that he did not believe he was obligated to come to the appointment.  That same day Simmonds went to the Portland Field Office with a signed but undated Form AR-11 that indicated Petitioner's address had changed to an address in Seattle, Washington, but Simmonds indicated Petitioner was not required to present himself because of his pending appeal in the Ninth Circuit Court of Appeals.  An ICE official, Jeffrey Chan, informed Simmonds that Petitioner had a duty to present himself at the appointment and that failure to do so could lead to a breach of the bond.

As noted, on January 23, 2013, the day before Petitioner's appointment, Petitioner filed his appeal in the Ninth Circuit Court of Appeals.  As a result, a stay of Petitioner's removal was issued.

That same day (January 23, 2013) Simmonds called Chan and informed him that Petitioner had stated he did not need to appear due to his petition for review.  Chan advised Simmonds that

6  -   OPINION AND ORDER

Petitioner was required to appear and that the bond would be forfeited if he failed to do so. Simmonds also called Chan a second time on the afternoon of January 23, 2013, and Chan again insisted Petitioner was required to present himself at the ICE office and that failure to do so would be a breach of the bond.

Petitioner also called Chan that day and informed him that he was not required to appear for his appointment. Chan, however, informed Petitioner that he was required to appear for the purpose of completing a change of address card and a travel-document application. Petitioner called Chan again later that afternoon and insisted that ICE had a travel document on file and that he did not have to appear for the appointment. Chan informed Petitioner that he would not be detained at the appointment, but that Petitioner was required to appear because the travel document that ICE had on file had expired and Petitioner needed to complete an application for a new one.

Petitioner called Chan at the time of the scheduled appointment on January 24, 2013, and asked if it was correct that he would not be detained if he appeared. Chan again informed Petitioner that ICE did not have any intention of detaining him at the appointment, but Petitioner would be breaching his bond if he failed to appear for the appointment. At the conclusion of this conversation Petitioner stated he would not appear for the appointment and intended to appeal any finding of breach.

7   -   OPINION AND ORDER

Approximately 45 minutes later Petitioner called Chan again and informed him that he had read the terms of the bond and did not believe he was required to present himself at the appointment.

Petitioner did not appear for the January 24, 2013, appointment.

On January 29, 2013, the ICE Field Office Director determined the bond was breached and sent notice of the breach to Simmonds.

On February 26, 2013, Simmonds filed an appeal of the bond breach decision in which he contended (1) the bond conditions were not violated because he was only required to produce Petitioner (and Petitioner was only required to appear) for either removal or for formal Immigration Court hearings, and (2) the record contained a valid travel document and change of address for Petitioner.

On May 15, 2013, the United States Citizenship and Immigration Service's Administrative Appeals Office dismissed the appeal after determining that neither the terms of the bond nor the Immigration Judge's order limited Simmonds's duty to present Petitioner (or Petitioner's duty to appear) to only formal Immigration Court proceedings or removal.

On July 23, 2013, Petitioner filed this action in which he seeks review of the ICE Field Director's bond breach determination under the Administrative Procedure Act (APA).

8  -   OPINION AND ORDER

## STANDARDS

Summary judgment is appropriate when there is not a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). *See also Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of general issues for trial." *n re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn

9    -    OPINION AND ORDER

from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). *See also Moore v. Potter*, 701 F. Supp. 2d 1171 (D. Or. 2010). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

Immigration bond breach determinations by the government are reviewed under the APA. *United States v. Gonzalez & Gonzalez*

10 - OPINION AND ORDER

*Bonds and Ins. Agen., Inc.*, 728 F. Supp. 2d 1077, 1096 (N.D. Cal. 2010). Accordingly, the court will only set aside the agency's bond breach determination if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Immigration and Nationality Act provides the Secretary of Homeland Security "shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103(a)(3).

Department of Homeland Security regulations provide:

> A bond is breached when there has been a substantial violation of the stipulated conditions. A final determination that a bond has been breached creates a claim in favor of the United States which may not be released or discharged by a Service officer. The district director having custody of the file containing the immigration bond executed on Form I-352 shall determine whether the bond shall be declared breached or cancelled, and shall notify the obligor on Form I-323 or Form I-391 of the decision, and, if declared breached, of the reasons therefor, and of the right to appeal in accordance with the provisions of this part.

8 C.F.R. § 103.6(e). When "evaluating whether a bond violation is substantial, [courts] look to four factors: (1) the extent of the breach; (2) whether it was intentional or accidental on the part of the alien; (3) whether it was in good faith; and (4) whether the alien took steps to make amends or place himself in compliance." *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 501 (7th Cir.

11 - OPINION AND ORDER

1995). Accordingly, this Court must determine whether Respondents' "decision that the bond conditions were substantially violated was plainly erroneous or inconsistent with 8 C.F.R. § 103.6(e)." *Id.*

Respondents contend this is a straightforward case: Respondents made a timely demand that Simmonds ensure Petitioner's presence at the appointment and that Petitioner appear at the appointment. Simmonds failed to do so and Petitioner failed to appear, both resulting in a substantial breach of the Bond Agreement. Respondents contend, therefore, ICE's breach determination was not arbitrary or capricious.

Petitioner, on the other hand, contends there was not any substantial violation of the Bond Agreement on the grounds that (1) the Notice to Deliver Alien was defective because the only stated reason for requiring the appointment was to "discuss your immigration status," (2) the requested appointment did not bear any rational relationship to the purposes for which Petitioner had submitted a valid Form AR-11 and travel document to Respondents, (3) the Immigration Judge limited the purposes for which Respondents could demand his appearance when he stated "$30,000.00 will secure his appearance if he is required to report for removal or a future Immigration Court proceeding," and (4) Respondents acted in bad faith by falsely representing that they did not have a valid travel document on file and declining

12 - OPINION AND ORDER

to file Petitioner's entire A-file in the record.

The Court finds Petitioner's arguments are not persuasive. Although the stated reason for the appointment in the Notice to Deliver Alien could have been more specific, there is not any provision in the Bond Agreement that requires Respondents to provide a more specific reason for requiring Petitioner to appear at an appointment. Moreover, any lack of specificity in the initial Notice to Deliver Alien was remedied when Chan informed Petitioner and Simmonds of the purpose of the appointment on multiple occasions.

The Court also notes there is not any evidence in the record that demonstrates Respondents had a valid travel document on file. Although Respondents provided Petitioner with a copy of his A-file during discovery, Petitioner has not submitted evidence sufficient for consideration on summary judgment (see generally Summary Judgment Advice Notice (#48)) that a valid travel document was in his A-file at the time that Respondents required Petitioner's presence at the appointment. Accordingly, because there is not any evidence in the record to contradict Respondents' showing that they did not have a valid travel document on file at the time, there is not a genuine dispute of material fact on this record as to whether Respondents had a reasonable basis for requiring Petitioner's presence at the appointment.

13  -  OPINION AND ORDER

The Court also is not persuaded by Petitioner's argument that the Immigration Judge intended to limit the purposes for which Respondents could require Petitioner to present for an appointment.  The Bond Agreement itself does not limit Respondents' ability to require Petitioner to appear for a meeting, and the Immigration Judge's statement that "$30,000.00 will secure his appearance if he is required to report for removal or a future Immigration Court proceeding" is most naturally read to refer to two common reasons for which Respondents require an alien to appear at the Field Office rather than to limit the purposes for which Respondents could demand Petitioner's presence.  Moreover, there is not any evidence in the record that indicates Respondents were acting in bad faith when they demanded Petitioner's presence at the meeting or when they filed in the record only that portion of Petitioner's A-file most relevant to the bond breach determination.

In addition, each of the factors set out in *Ruiz-Rivera* support Respondents' finding that Simmonds's failure to ensure Petitioner's presence at the appointment and Petitioner's refusal to appear at the appointment were substantial violations of the Bond Agreement.  *See* 70 F.3d at 501.  The extent of the breach was significant, intentional, and not in good faith. Petitioner's contention at the time of his refusal that he was not required to appear under the terms of the Bond Agreement was

14  -   OPINION AND ORDER

unreasonable because the Bond Agreement unambiguously provides Simmonds were required to present Petitioner and Petitioner was required to appear before an immigration official "upon each and every written request" to do so. Finally, Petitioner did not take any steps to make amends or to bring himself into compliance with the terms of the conditions of his bond.

On this record, therefore, the Court concludes Respondents' determination that Petitioner substantially violated the terms of the Bond Agreement was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and, therefore, Respondents are entitled to summary judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Respondents' Motion (#47) for Summary Judgment and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 8th day of September, 2015.

_____
ANNA J. BROWN
United States District Judge